STATE OF NORTH DAKOTA, Respondent, v. M. N. GERGEN, Appellant.

(219 N. W. 334.)

**Evidence — conviction of embezzlement not sustained by evidence.**
In a criminal action for embezzlement the evidence is examined and held to be insufficient to sustain a verdict of guilty.

Opinion filed May 3, 1928.

Embezzlement, 20 C. J. § 82 p. 486 n. 60.

Appeal from judgment and order denying motion for a new trial, *Lowe, J.*

Defendant was convicted of the crime of embezzlement in District Court of Towner County, and appeals.

Reversed and dismissed.

*Kehoe & Verret,* for appellant.

Penal laws are to be expounded strictly against an offender and liberally in his favor.    25 R. C. L. 1083.

Material allegations must be alleged in the indictment or information in an embezzlement action, each of the same must be proved at the trial by competent evidence beyond a reasonable doubt.    State v. Ugland, 48 N. D. 841, 187 N. W. 237; State v. Hoff, 29 N. D. 412, 150 N. W. 229; State v. Lachelt, 18 N. D. 88, 118 N. W. 240; State v. McCullough (Minn.) 195 N. W. 764.

"An indictment for embezzlement is sufficient if it follows the words of the statute but this is only so where the words used in this statute are sufficient to describe every fact essential to constitute the offense; otherwise it is not sufficient."    State v. Ives (La.) Ann. Cas. 1912C, 901.

"The averment of the relation in which the defendant stood to the person injured by his wrongful act is a material one, and failure to prove such averment is fatal."    20 C. J. 481.

*George F. Shafer,* Attorney General, *L. L. Butterwick,* Assistant Attorney General, and *Chas. H. Houska,* State's Attorney, for respondent.

"It is a general rule that if an indictment is based upon a statute, it is sufficient if it follows the wording thereof, it being unnecessary to supplement the recitals of the statute by additional statements of fact."    26 C. J. 932, § 69(2).

"Where the criminal character of the act is as strongly stated in the words used in the indictment as those given in the statute, they are the words used in the statute defining the offense, and mean as much in the indictment as in the statute, and in either way they describe the offense."    State v. Longsteth, 19 N. D. 268, 121 N. W. 1114.

"To constitute the crime of embezzlement the possession of the property appropriated must have been, by the owner or for or in his behalf, intrusted to the accused so that a relation of trust and confidence rela-

tive to the thing appropriated is created, and it must appear that the accused had access to or possession of the property embezzled by virtue of such relation of trust and confidence." State v. Ugland, 48 N. D. 841, 187 N. W. 237.

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted." State v. Collins, 4 N. D. 433, 61 N. W. 467.

LEMBKE, Dist. J. It appears from the evidence that prior to September, 1924, one Otto Krumwiede gave to the Bank of Perth, North Dakota, two notes; one dated September 22nd, 1923 in the sum of $850 with interest at 10% and the other for $1,000; the latter note however is not in evidence and the date thereof is not disclosed, both of said notes being put up as collateral by the Bank of Perth, the $850 note with the First National Bank of Minneapolis, Minn. and the $1,000 note with the War Finance Corporation, and that both were past due on September 26th, 1924. It also appears that the defendant herein, M. N. Gergen was on said date acting for and in behalf of the Bank of Perth, N. Dak. and that he either requested or demanded payment of Otto Krumwiede of the said indebtedness, and that in compliance therewith Krumwiede on said date issued his check in the sum of $891.20 payable to the Bank of Perth, N. Dak. to be applied upon said notes. It is claimed by the state that the defendant, M. N. Gergen from the amount of said check embezzled the sum of $487.20. The grand jury returned an indictment against the defendant reading as follows:

"The grand jury of the county of Towner, in the second judicial district, state of North Dakota, duly and legally impanelled, charged and sworn according to law, in open court at the regular March A. D. 1926 term of said court, in the name and by the authority of the state of North Dakota, upon their oaths as grand jurors, do hereby charge that M. N. Gergen did, in the county of Towner and state of North Dakota, on or about the 26th day of September, 1924, commit the crime of embezzlement, committed as follows, to-wit: that at the said time and place, the said defendant M. N. Gergen, being then and there in possession, custody and control of certain property, to-wit: money and credits of the worth and value of $487.20, the property of one Otto

Krumwiede, which property was theretofore entrusted with the said defendant M. N. Gergen by the said Otto Krumwiede, to immediately pay the said sum of $487.20 to the First National Bank of Minneapolis, Minn. for the use and account of the said Otto Krumwiede, did; then and there, to-wit; on or about the 26th day of September A. D. 1924 wilfully and knowingly, unlawfully, feloniously and fraudulently appropriate and convert said property to his own use and to the use of the Bank of Perth, a banking corporation located at Perth, N. Dak., and to a use and purpose not in a due and lawful execution of his trust. This contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of North Dakota. "Dated this 19th day of March A. D. 1926.

"E. E. Owen, foreman of Grand Jury."

To the foregoing indictment the defendant pleaded not guilty, and upon such plea he was tried. The jury found the defendant guilty on July 9th, 1926 and on July 10th, 1926 judgment was entered and the defendant sentenced to the state penitentiary for a term of not less than one nor more than three years. From said judgment, and the whole thereof, the defendant appealed. Subsequent thereto motion was made to set aside the verdict and for a new trial which was denied, and notice of appeal from said order denying new trial was filed April 5th, 1927. The defendant questions the sufficiency of the indictment and, also, assigns error upon the instructions; but inasmuch as we have reached the conclusion that the evidence is wholly insufficient to establish the commission of a crime by the defendant it becomes unnecessary to consider the assignments of error relating to the indictment and the instructions.

The main question in this case is the sufficiency of the evidence to support the verdict, and we will therefore consider that question. It would seem that the defendant placed the sufficiency of the evidence squarely before the trial court by his motion for a new trial reading as follows:

"The state and the defendant having rested, the defendant moves the court to advise the jury to return a verdict of not guilty upon the grounds and for the reason that the evidence in this case wholly fails to show that the money specified in the indictment was ever turned

over to M. N. Gergen. The evidence expressly shows that the check in question was made payable and delivered to the Bank of Perth. The evidence wholly fails to show that the defendant ever appropriated any of the proceeds of that check or the check itself. The evidence wholly fails to show that the defendant had anything to do with respect to the handling of the check and the proceeds of the notes at the time in question, and the evidence is wholly insufficient to sustain a verdict of guilty in this case."
—which said motion the court denied.

Otto Krumwiede, on direct examination, testified in part as follows:

Q. Have you had any business transactions with the defendant M. N. Gergen on or about the 26th of September, 1924?

A. Yes.

Q. You may state what that transaction was?

A. I gave a check for $891.20 which was to be applied upon a note of $850. To cut the note down to $450. I gave him $487.20 to apply on the note including interest.

Q. That is you paid him $400 on the principal and $87.20 on the interest of the $850 note?

A. Yes.

Q. I show you exhibit No. 1, is that the check you paid to the defendant Gergen?

A. Yes, sir.

Q. And in whose handwriting is that check?

A. In M. N. Gergen.

Q. Was the check for $891.20?

A. Yes.

Q. What was he to do with the $891.20?

A. To apply on two different notes, one for $850 and another for $1,000. He was to apply $400 on the $850 note and interest which amounted to $487.20.

Q. That is principal and interest?

A. Yes.

Q. Out of this check?

A. Yes.

Q. Was this check paid?

A. Yes, sir.

Q. Through the Bank of Perth?

A. Yes, sir.

Mr. Houska:   We offer in evidence exhibit No. 1.

Q. And at the time you made this payment to Mr. Gergen did you get a statement from him?

A. Yes.

Q. I will show you exhibit No. 2 and ask you what that is?

Q. Is that exhibit No. 2 the statement you got from him?

A. Yes.

Q. Showing payment on the $850 note?

Mr. Houska:   We offer in evidence exhibit No. 2.

Q. Now at the time you gave the check referred to of which $487.20 was to be applied on the $850 note, what else did you give him?

A. $300 which was to be applied on the principal note of $1,000 and interest $104.

Q. That is, out of the amount of that check $300 was to be applied on some other note held by the War Finance?   Did you make any settlement on the balance of that note?

A. $850 note, not at that time—yes, I gave him a new note for $450 the balance of the note.

Q. I will show you exhibit No. 3 and ask you if that is the note?

A. Yes, sir.

Q. Now, so that we may understand you Mr. Krumwiede, you gave Mr. Gergen $487.20 in money and a note for $450 to take care of the $850 note?

A. Yes.

Q. I will show you Exhibit No. 4 and ask you what that is?   Is that the note for $450 that you referred to in your testimony?

A. Yes, sir.

Q. Then you gave the $487.20 and a $450 note in settlement of that note?

A. Of this note.

Mr. Houska:   We offer in evidence exhibit No. 4.

Mr. Houska:   We offer in evidence exhibit No. 3.

Q. Do you know whether the $487.20 was applied upon the $850 note referred to?

A. No, it was not.

Q. Do you know where the $850 note was?

A. Yes, sir.

Q. At the time you made the payment?

A. Yes.

Q. Where was it?

A. First National Bank of Minneapolis.

Under cross-examination, Mr. Krumwiede testified as follows:

Q. Didn't you go in there and pay over this eight hundred and some odd dollars in money and tell the people there in the bank to apply it on your indebtedness?

A. Yes.

Q. And he told you he would pay the $450 upon it did he?

A. Yes, sir, and interest, $400 and interest.

Q. $400 and interest?

A. Yes.

By the Court:

Q. Did you talk with Mr. Gergen that day in the bank about your indebtedness and what it was?

A. Yes.

Q. What was said about that?

A. He told me to sell the grain and pay what I could. He told me the First National Bank wanted their money, the War Finance was not so anxious about theirs.

Q. You talked about owing two notes there?

A. Yes.

Q. Did you talk about owing other notes there?

A. There was several small notes which I paid.

Mr. Krumwiede on rebuttal testified in part as follows:

Q. Did you say anything to him as to where the money should be sent?

A. Yes.

Q. What was said. Just tell what you told Mr. Gergen?

A. That is what he said he wanted.

Q. Tell the jury what you told Mr. Gergen with reference to the payment you were making there?

A. I told him that was all right with me. It did not make any difference as long as I had to pay, I just as soon pay it either way.

Q. Did you specify there between yourself and Gergen how that payment was to be made?

By the Court:

Q. Was there anything more said about that. About how the money was to go?

A. No, I don't think so.

Mr. Landmark testified on direct examination in part as follows:

Q. Mr. Landmark, do you know where the $891.20 was applied?

A. Yes.

Q. You may tell the jury where the money was to be applied upon the indebtedness in the bank?

A. There was one note for $1,000 and one for $850 together with interest on both, and considering a renewal note of $700 and renewal note of $450 and a cash payment of $891.20 to settle those two notes.

Q. How was that check divided do you know?

A. No, I don't say that I know.

Q. Do you know how much was to be applied upon the $1,000 note and how much was to be applied upon the $850 note?

A. No, sir.

Q. A portion of this check Mr. Landmark went toward the $850 note did it not?

A. Not necessarily—no; it was not a part of the two notes as I stated a while ago, $850.

Q. Was it applied?

A. I don't know. It was a complete cut-off made as I said a while ago.

*Testifying with reference to this $850 note he testified as follows:*

Q. Shows that the $850 note has been paid?

A. Yes, in some form or other.

Q. Now, can you show us in what form it has been paid?

A. Yes, if you give me that statement there.

Q. Exhibit No. 2?

A. We have explained it already.

Q. Explain how that $850 note alleged to have been paid, was paid?

A. Paid by the new note for $700, new note for $450 and check for $891.20.

Q. Was that all paid in cash, Mr. Landmark?

A. I told you it was paid in a $700 note, $450 note and check for $891.20.

Q. Will the record show what the $450 note was, what payment was made on some previous note?

A. No, just shows the collateral.

Q. Do the books show, Mr. Landmark, where the cash was applied and where the notes was applied?

A. No, sir.

By the Court:

Q. Can you tell from the books whether the cash was applied upon the $850 note or applied upon the $1,000 note?

A. I would not know.

By Mr. Houska:

Q. Will you tell the jury, Mr. Landmark, how this $850 note in evidence was taken care of in the records of your bank as to a partial payment and renewals?

Q. Does it show in the books there?

A. No, I said that before, the statement was made of the two notes at one time.

By the Court:

Q. Well, did Mr. Krumwiede get back his $1,000 note that day do you know?

A. I presume he did not, I said it was held as collateral.

Q. On the same indebtedness?

A. Yes, on—as collateral to one of the renewal notes, that would be customary.

It appears from the evidence that exhibit No. 4, the $850 note and the renewal note exhibit No. 3 for $450 were evidently paid for the reason that they were in the possession of the complaining witness, although he does not show by the evidence that he paid the $850 note over again after the settlement made of which exhibit No. 2 is a state-

ment. It will therefore be presumed, and it must be a fact, that the renewal note of $450 was subsequently paid by the complaining witness to the Perth bank in money, and since there is no evidence to the contrary we are justified in believing, and so find, that the payment of the renewal note of $450 cancelled and released the $850 note as per statement exhibit No. 2. That would still leave the $1,000 note, which would be held as collateral to the $700 note, remaining in the hands of his creditors. And if such is the case, and we must find from the evidence that it is, then the check and the money therein stipulated and known as exhibit No. 1 for $891.20 is fully accounted for and fully explained; and if exhibit No. 1 and exhibit No. 2 synchronize it proves to our mind that the entire value of the check exhibit No. 1, in the amount of $891.20 was applied on the indebtedness that Otto Krumwiede owed to the Perth bank, and we fail to see where the state has proven any embezzlement on the part of the defendant or anyone else.

The indictment charges that the money intrusted was to be paid for the use and account of Otto Krumwiede, and we must believe what Mr. Krumwiede has testified to, viz.: "I told him that was all right with me, it did not make any difference as long as I had to pay it, I just as soon pay it either way." Such testimony being what was actually said would naturally cause us to believe that that is what transpired and was mutually agreed to between the parties rather than the complaining witness's conclusions as testified to on direct examination, although under direct examination he also testified that the money was to be applied on his indebtedness to the bank.

From the foregoing it will be seen that the state failed to prove its charge against the defendant; that the verdict of guilty is not sustained by the evidence and that the trial court should have set the verdict aside.

The judgment of conviction and the order denying a new trial are reversed and the cause is remanded with directions that it be dismissed.

NUESSLE, Ch. J., and CHRISTIANSON, BURKE, and BIRDZELL, JJ., concur.

Mr. Justice BURR, being disqualified, did not participate; Honorable FRANK T. LEMBKE, Judge of the Sixth Judicial District, sitting in his stead.